IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LEIGH A. NEWBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CIV-10-1153-C |
| | ) | |
| STATE OF OKLAHOMA ex rel. | ) | |
| OKLAHOMA DEPARTMENT OF | ) | |
| PUBLIC SAFETY; KEVIN WARD, | ) | |
| individually as former Commissioner | ) | |
| for the Oklahoma Department of Public | ) | |
| Safety; LARRY ALEXANDER, | ) | |
| individually as former Assistant | ) | |
| Commissioner for the Oklahoma | ) | |
| Department of Public Safety; | ) | |
| WELLEN POE, individually as former | ) | |
| General Counsel for the Oklahoma | ) | |
| Department of Public Safety; | ) | |
| MICHAEL C. THOMPSON, | ) | |
| individually as Commissioner for the | ) | |
| Department of Public Safety; and | ) | |
| CLINT DICKSON, individually as | ) | |
| Director of Administrative Services | ) | |
| for the Oklahoma Department of | ) | |
| Public Safety, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Following her termination from employment with Defendant Oklahoma Department of Public Safety ("DPS"), Plaintiff initiated the present action raising multiple claims for relief. The individual Defendants, Ward, Alexander, Poe, Thompson, and Dickson, who have been sued in their individual capacities, have filed the present Motion to Dismiss. Specifically, the individual Defendants challenge counts 2, 3 and 7. Count 2 raises a claim

for violation of Plaintiff's First Amendment Freedom of Speech rights; Count 3 raises a claim for violation of Plaintiff's Fourteenth Amendment substantive due process rights; and Count 7 raises a claim for intentional infliction of emotional distress.

The Defendants first argue that Plaintiff's claims for First Amendment violations fail, as they are entitled to qualified immunity. When a defendant raises a claim of qualified immunity, "[t]he plaintiff must demonstrate on the facts alleged both that the defendant violated [her] constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009). In order to meet the clearly-established standard, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). See also Ashcroft al-Kidd, ___ U.S. ___, 131 S.Ct. 2074, 2083 (2011).

The first step in determining whether Defendants are entitled to qualified immunity in this case is to determine whether or not the alleged constitutional violation was clearly established. When a First Amendment claim is brought, the court must analyze the facts of that claim to determine whether a plausible violation of the First Amendment occurred. The analysis used in that process has been developed by the Supreme Court in Pickering v. Board of Education of Township High School Dist. 205, Will County, Ill., 391 U.S. 563 (1968), and modified by Garcetti v. Ceballow, 547 U.S. 410 (2006). This test is known as the

Garcetti/Pickering test. Under the first three steps of that test, the court must determine whether plaintiff's speech was made pursuant to her official duties, or whether she spoke as a citizen, and if the court finds the speech was made pursuant to her official duties, there is no constitutional protection and the inquiry ends. If the speech was made as a citizen, the analysis proceeds to step two. Step two is whether the speech was made on a matter of public concern. If it was not a matter of public concern, there is no constitutional protection. If it was a matter of public concern, then the court proceeds to step three. Step three is whether the plaintiff's interest in commenting on issues outweighs the interest of a governmental entity as an employer. If not, then the inquiry ends; if so, it goes to step four. Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192, 1202-03 (10th Cir. 2007). For the fourth step, the plaintiff must show that her speech was a substantial or motivating factor in the detrimental employment decision, and finally, if she satisfies the fourth element, defendant may still avoid liability if it demonstrates it would have taken the same action even in the absence of the protected speech.

In determining whether the speech falls within the realm of official duties, the Tenth Circuit takes a broad view, asking if the speech "involves 'the type of activities that [the employee] was paid to do.'" Chavez-Rodriguez v. City of Santa Fe, 596 F.3d 708, 713 (10th Cir. 2010) (quoting Green v. Bd. of Cnty. Comm'rs, 472 F.3d 794, 801 (10th Cir. 2007)). Whether the speech relates to official duties is a legal inquiry for the Court to satisfy and not a factual question for the jury. Id. at 713. Here, Plaintiff's speech involved complaints about the manner in which certain promotions were made. Plaintiff's comments were that

3

Defendants did not follow proper policy and procedures and she felt that those promoted were not the most qualified.

In paragraph 11 of the Second Amended Complaint, Plaintiff notes that part of her responsibilities were administrative duties related to the internal promotion process of Oklahoma Highway Patrol troopers. Identifying Plaintiff's speech from her Second Amended Complaint, the Court notes as follows: In ¶ 20, Plaintiff notes that she told an investigator she did not believe the promotions went to the most qualified troopers and that there was outside pressure to promote certain of the troopers. Plaintiff also indicates she voiced her concern about the relationship between one of the promoted troopers and the Chief. Paragraph 23 indicates that Plaintiff contacted two Oklahoma State Representatives and asked to speak with them about news stories that had aired on a television station. In that meeting, Plaintiff discussed with the Representatives her knowledge of what had occurred during the process. Later, Plaintiff also told an individual identified as Defendant Ward's personal attorney her feelings about the fact that the policy and procedures regarding promotions were not followed.

Given Plaintiff's job responsibilities and her explanation of her duties in that job, the Court finds that the comments made to all individuals other than the two State Representatives were within the scope of her employment and therefore are not entitled to First Amendment protection. No further analysis of those actions is necessary under the Garcetti/Pickering test. See Thomas v. City of Blanchard, 548 F.3d 1317, 1324 (10th Cir.

2008), and Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1331-32 (10th Cir. 2007).

Because Plaintiff's "speech" to the two State Representatives passes the first step, further analysis is warranted. Step two of the test questions whether or not the subject of the speech was a matter of public concern. Here Plaintiff argues that the comments to the state legislators was a matter of public concern because they addressed allegations of discrimination. As Plaintiff notes, speech which discloses improper operations of government inefficiency, impropriety, or other malfeasance clearly involves matters of public concern. McFall v. Bedner, 407 F.3d 1081, 1088 (10th Cir. 2005). Thus, the Court finds Plaintiff's pleading satisfies the second step.

The third step in the analysis requires the Court to determine whether or not Plaintiff's interest in commenting on the issues outweighs the interest of the governmental entity as an employer. The burden is on Defendants to demonstrate that the speech resulted in disruption. See Dill v. City of Edmond, 155 F.3d 1193, 1204 n.5 (10th Cir. 1998). "In conducting the required balancing of interests, the court examines the manner, time, and place of the speech, as well as the context in which the dispute arose." Weaver v. Chavez, 458 F.3d 1096, 1100 (10th Cir. 2006), citing Connick v. Myers, 461 U.S. 138, 152-53 (1983).

Defendants have failed to cite any examples of disruption caused by Plaintiff's complaints to the state legislators. While Defendants offer some bald assertions that Plaintiff's speech could have affected complaints raised by qualified applicants, Defendants offer no examples of such disruption, nor do they offer any meaningful discussion of how

5

that disruption, even if it occurred, would have impaired the ability for discipline by superiors or created disharmony among co-workers. Accordingly, the Court finds that Defendants' motion to dismiss Plaintiff's First Amendment Claims shall be denied to the extent that it raises allegations about Plaintiff's complaints to the two state legislators. In all other respects the motion to dismiss the First Amendment claim will be granted.

The next question is who may be responsible for the potential violation of Plaintiff's First Amendment rights. Plaintiff has named all the individual Defendants as parties to her First Amendment claim. However, given the narrow scope of the claim as set forth by the Court above, it is apparent that not all individual Defendants are potentially liable for the First Amendment violation. In order to survive a challenge based on qualified immunity, a plaintiff must show "that the defendant violated [her] constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." Riggins, 572 F.3d at 1107. Further, in order to pursue a claim against an individual defendant pursuant to 42 U.S.C. § 1983, there must be some measure of personal participation in the alleged violation. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, the Court must determine to what extent the individual Defendants had personal involvement in any violation of Plaintiff's First Amendment rights.

Plaintiff's assertions of the manner in which her First Amendment rights were violated are quite vague. In essence, she offers nothing more than conclusory comments that her First Amendment rights were violated. She fails to identify any factual allegations demonstrating

that disruption, even if it occurred, would have impaired the ability for discipline by superiors or created disharmony among co-workers. Accordingly, the Court finds that Defendants' motion to dismiss Plaintiff's First Amendment Claims shall be denied to the extent that it raises allegations about Plaintiff's complaints to the two state legislators. In all other respects the motion to dismiss the First Amendment claim will be granted.

The next question is who may be responsible for the potential violation of Plaintiff's First Amendment rights. Plaintiff has named all the individual Defendants as parties to her First Amendment claim. However, given the narrow scope of the claim as set forth by the Court above, it is apparent that not all individual Defendants are potentially liable for the First Amendment violation. In order to survive a challenge based on qualified immunity, a plaintiff must show "that the defendant violated [her] constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." Riggins, 572 F.3d at 1107. Further, in order to pursue a claim against an individual defendant pursuant to 42 U.S.C. § 1983, there must be some measure of personal participation in the alleged violation. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, the Court must determine to what extent the individual Defendants had personal involvement in any violation of Plaintiff's First Amendment rights.

Plaintiff's assertions of the manner in which her First Amendment rights were violated are quite vague. In essence, she offers nothing more than conclusory comments that her First Amendment rights were violated. She fails to identify any factual allegations demonstrating

how the individual Defendants violated her rights, either by preventing her from complaining to the state legislators, or taking some action after those complaints. As a result, Plaintiff has failed in her burden of demonstrating the violation of a clearly-established constitutional right. She has also failed in her burden of raising her claim of a right to relief above the speculative level. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). As a result, the individual Defendants are entitled to dismissal on the basis of qualified immunity and/or failure to state a claim of Plaintiff's First Amendment violation. However, because Plaintiff may be able to amend her Complaint to state sufficient facts to support a claim for relief, the dismissal will be without prejudice. Plaintiff is advised that in any Amended Complaint she must, with the required specificity, identify how her constitutional rights were violated as a result of her discussions with the state legislators. The other allegations of First Amendment constitutional violation raised by Plaintiff in her Second Amended Complaint fail to satisfy the Garcetti/Pickering test and will not be considered further by the Court.

The individual Defendants next seek dismissal, based on qualified immunity, of Plaintiff's claim for violation of her Fourteenth Amendment substantive due process rights.[*] In her response brief, Plaintiff asserts that the individual Defendants' conduct has violated her good name, reputation, honor, or integrity and thereby damaged her reputation. Flanagan v. Munger, 890 F.2d 1557, 1571 (10th Cir. 1989).

---

[*] Plaintiff has stipulated to the dismissal with prejudice of her substantive due process claims against Defendants Thompson and Dickson. Therefore, the only substantive due process claims remaining relate to the conduct of Defendants Ward, Alexander, and Poe.

As with her claims of First Amendment retaliation, Plaintiff's complaint is unsustainably vague as to the allegations being raised against the remaining individual Defendants. None of the paragraphs in Count 3 of the Second Amended Complaint identify any specific action which could be construed as a Fourteenth Amendment violation. Thus, as with the First Amendment claim, Plaintiff has failed to adequately plead the violation of a constitutional right. Moreover, none of the facts set forth above as the supporting factual allegations offer any basis other than a conclusory guess that one of the individuals somehow violated her Fourteenth Amendment rights by leaking information to the press. Plaintiff has failed to identify who that person or persons were. Moreover, Plaintiff has never alleged that any person was ever given a specific public or private ground for her termination. In addition, as Defendants note, Plaintiff had available to her a post-discipline/termination procedure by appeal to the Oklahoma Merit Protection Commission pursuant to 42 Okla. Stat. § 840-2.5, § 840-2.6, and/or § 840-6.6. Because Plaintiff failed to take advantage of this name-clearing hearing, she cannot bring a Fourteenth Amendment liberty interest claim. See <u>Bledsoe v. City of Horn Lake, Miss.</u>, 449 F.3d 650 (5th Cir. 2006).

While it does not appear that Plaintiff can overcome the legal flaw of failing to request or pursue an appeal through the Oklahoma Merit Protection Commission, given the sparsity of her complaint and the fact that Defendants raised the matter of the failure to appeal only in their reply brief, the Court will dismiss Plaintiff's Fourteenth Amendment claim against all Defendants without prejudice. However, Plaintiff is warned that failure to address the

matters discussed herein in correcting any renewed claim for a violation of her Fourteenth Amendment substantive due process rights will result in dismissal of the claim.

Finally, the individual Defendants seek dismissal of Plaintiff's intentional infliction of emotional distress claim. According to Defendants, Plaintiff has failed to allege facts demonstrating that their conduct was so extreme and outrageous that it was beyond all possible bounds of decency and therefore they are entitled to dismissal of Plaintiff's claim.

Under Oklahoma law, to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the plaintiff actually experienced emotional distress, and (4) the emotional distress was severe. Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1387 (10th Cir. 1991). Under Oklahoma law, the Court must act as a gatekeeper, making an initial determination about the validity of Plaintiff's claims before sending them to the jury.

> The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based upon the evidence presented, severe emotional distress can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed.

Breeden v. League Svcs. Corp., 1978 OK 27, ¶ 12, 575 P.2d 1374, 1377-78 (footnote omitted). Further, the distress of which Plaintiff complains must be of such a character that no reasonable person could be expected to endure it. Daemi, 931 F.2d at 1389. Here, the

allegations of Plaintiff's Complaint fail to demonstrate that Defendants' conduct was either outrageous or that her distress was severe. Rather, Plaintiff only offers a conclusory statement that she did in fact suffer severe emotional distress as a result of the conduct.

In the absence of sufficient factual allegations demonstrating the extent to which Defendants' conduct could be classified as extreme or outrageous and/or sufficient allegations demonstrating Plaintiff's distress was in fact severe, the Court finds that Defendants' motion to dismiss the intentional infliction of emotional distress claim should be granted. As with the other claims, because Plaintiff may be able to correct the omissions, the dismissal will be without prejudice.

For the reasons set forth herein, Individual Defendants Motion to Dismiss (Dkt. No. 34) is GRANTED. Plaintiff's claims are dismissed without prejudice. To the extent Plaintiff wishes to correct the deficiencies noted herein by filing an amended complaint, that pleading must be filed within 20 days of the date of this Order.

IT IS SO ORDERED this 29th day of December, 2011.

ROBIN J. CAUTHRON
United States District Judge